## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>         v.<br><br>David Alfonso BARRERA Nunes (1),<br>Luis Enrique BARRETO Goitia (2),<br><br>                              Defendants. | Case No.: __25MJ6283-DDL__<br><br>COMPLAINT FOR VIOLATION OF<br><br>Title 8, U.S.C., Sec. 1324(a)(l)(A)(i),<br>(v)(II) and (a)(l)(B)(iv) – Attempted<br>Bringing in Aliens Resulting in Death;<br>Title 8, U.S.C., Sec. 1324(a)(2){B}{ii} –<br>Bringing in Aliens for Financial Gain; Title<br>18, U.S.C., Sec. 2 – Aiding and Abetting<br><br>Title 8 U.S.C. Sec. 1326<br>Re-entry of Removed Aliens |

The undersigned complainant being duly sworn states:

### COUNTS 1-4

On or about November 14, 2025, within the Southern District of California, defendant, David Alfonso BARRERA Nunes, with the intent to violate the immigration laws of the United States, did bring, and attempt to bring, to the United States, an alien, namely, did bring, and attempt to bring, to the United States, the aliens below, knowing that said persons were aliens, at a place other than a designated port of entry and at a place other than as designated by the Secretary of the Department of Homeland Security (Title 6, United States Code, Sections 251 and 557) resulting in the death of the aliens below:

| Count | Name |
|---|---|
| 1. | Bartolo BALTAZAR Baltazar |
| 2. | Epifanio MOLINA Bravo |
| 3. | Hector LOPEZ Lopez |

4. Jane DOE

All in violation of Title 8, United States Code, Section 1324(a)(l )(A)(i), (v)(II), and (a)(l )(B)(iv).

COUNTS 5-7

On or about November 14, 2025, within the Southern District of California, defendant, David Alfonso BARRERA Nunes, with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that the aliens below, had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said aliens for purpose of commercial advantage and private financial gain;

| Count | Name |
|-------|------|
| 5 | Antonio MARTINEZ Reyes |
| 6 | Juvenal MARIANO Hernandez |
| 7 | Beatriz Janet VELASCO Mejia |

all in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii), and Title 18, United States Code, Section 2.

COUNT 8

On or about November 14, 2025, within the Southern District of California, defendant Luis Enrique BARRETO Goitia, an alien, who previously had been excluded, deported, and removed from the United States, attempted to enter the United States with the purpose, i.e., conscious desire, to enter the United States at or near Imperial Beach, California, without the Attorney General or her designated successor, the Secretary of the Department of Homeland Security (Title 6, United States Code, Sections 202(d) and (4), and 557), having expressly consented to the defendant's reapplication for admission into the United States, in violation of Title 8, United States Code, Section 1326.

2

And the complainant states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

*Antonio Medrano*
Antonio Medrano
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 17th day of November 2025.

Hon. David Leshner
United States Magistrate Judge

3

## STATEMENT OF FACTS

The complainant states that material witnesses Juvenal MARIANO Hernandez (MW 1), Beatriz Janet VELASCO Mejia (MW 2), and Antonio MARTINEZ Reyes (MW 3), are citizens of a country other than the United States, that each of said aliens have admitted that they are deportable as defined in Title 8, United States Code, 1229; that it is impracticable to secure their attendance at trial by subpoena; and that they are material witnesses and should be held or admitted to bail as prescribed in Title 18, United States Code, Section 3144.

On November 14, 2015, at approximately 2230 hours, Border Patrol Agents assigned to the Imperial Beach Station were notified of a small vessel crossing northbound though the maritime boundary line making its way towards Imperial Beach, California. At approximately 2333 hours, Border Patrol Agents responded to Imperial Beach and spotted a vessel that had capsized on the surf (6ft waves) and several people emerging from the water. Agents detained subjects that were attempting to flee and rescued others that were still in the water trying to get out. A total of five subjects were detained and questioned as to their citizenship and legal status, all five stated that they were Mexican citizens without proper immigration documents to enter or remain in the United States. Four other subjects perished in the accident and their bodies were recovered and turned over to the County of San Diego Medical Examiner. The five survivors were transported to the hospital for treatment or evaluation, while in custody of Border Patrol Agents. Two of the material witnesses identified David Alfonso BARRERA Nunez as the sole operator of the vessel.

The United States Border Patrol identified the five adult migrants as: Luis Enrique BARRETO Goitia (Defendant 2), Juvenal MARIANO Hernandez, Beatriz Janet VELASCO Mejia, David Alfonso BARRERA Nunez (Defendant 1), and Antonio MARTINEZ Reyes. The four deceased adults were identified as: Bartolo BALTAZAR Baltazar, Epifanio MOLINA Bravo, Hector LOPEZ Lopez, and Jane

4

1    DOE.

2        The following individuals were identified as material witnesses (MW) to the case: Juvenal

3    MARIANO Hernandez (MW 1), Beatriz Janet VELASCO Mejia (MW 2), and Antonio MARTINEZ

4    Reyes (MW 3).

5        Juvenal MARIANO Hernandez (MW 1) stated he was attempting to enter the United States

6    unlawfully to accompany his grandchild, Beatriz Janet VELASCO Mejia, who was traveling to

7    California. He did not want to travel by vessel, but VELASCO insisted. MARIANO stated VELASCO

8    arranged all travel and smuggling fees on his behalf and that he did not know the smuggling fee.

9    MARIANO stated he was smuggled via a boat/vessel. When shown a photograph depicting the

10   individuals involved in the incident, he promptly identified photograph #1 as the captain, identified as

11   David Alfonso BARRERA Nunez. MARIANO stated that before the vessel capsized, the captain

12   (BARRERA) ordered everyone to jump into the water. The vessel then capsized; MARIANO and

13   VELASCO were trapped inside. As the vessel rolled, MARIANO was able to pull VELASCO out, but

14   he remained trapped. He stated a piece of metal penetrated his leg, causing a severe injury. He believed

15   he was going to die but, when the vessel came to a stop, he was pulled out and rescued.

16       Beatriz Janet VELASCO Mejia (MW 2) stated she was caught approximately one week prior

17   when she was on another maritime vessel that was intercepted by the United States. VELASCO stated

18   she was deported back to Mexico where she then immediately returned to Tijuana to meet back with the

19   smugglers to attempt another trip to the United States. VELASCO stated upon her return, she stayed near

20   Popotla, Mexico in a waterfront building that had palm trees on the building. VELASCO stated she stayed

21   in the same building/room as the others who were smuggled with her during the November 14th event.

22   VELASCO identified Juvenal MARIANO HERNANDEZ as her grandfather and fellow passenger from

23   the November 14th event. VELASCO identified and recognized all passengers from the November 14th

24

25

26

27

28

5

event except for the individual in the picture labeled as "Picture 1" (BARRERA). VELASCO stated she was positive that none of her fellow passengers operated the vessel during the voyage from Mexico. When questioned about BARRERA, VELASCO stated she did not recognize him and ruled everyone out as a possible vessel captain except for BARRERA. VELASCO stated she could not remember if BARRERA was operating the vessel.

Antonio MARTINEZ Reyes (MW 3) stated that in the late afternoon hours of November 14, 2025, MARTINEZ and several other subjects were transported to Playas de Rosarito, in Rosarito, Baja California, Mexico. MARTINEZ and the other subjects hid in the bathrooms until later in the evening. MARTINEZ and the other subjects boarded a blue in color boat and departed for the United States. MARTINEZ was one of five subjects that was instructed to sit inside the cabin while the rest of the group remained on top during the rest of the trip. MARTINEZ did not know the exact number of subjects who were onboard the boat at the time of departure. MARTINEZ was provided with water and a life vest, but no food was available. MARTINEZ was under the impression that the boat was heading towards Los Angeles, California. Sometime during the trip, the boat began to have engine problems. MARTINEZ overheard two subjects arguing about how to fix the engine issues. MARTINEZ stated that the boat was flipped by a large wave as it approached the shoreline. MARTINEZ claimed that he found a pocket of air and was able to breathe air while the boat was flipped upside down and submerged with him and several other subjects inside. MARTINEZ was able to exit the cabin after another wave flipped the boat once again. MARTINEZ does not know how to swim and believed that he was going to drown. Somehow MARTINEZ was able to reach the shore and was aided by Border Patrol Agents who were present in the area.

MARTINEZ was presented with a photographic array consisting of the nine subjects that were rescued/recovered from the blue boat which capsized near the shoreline of Imperial Beach, California.

6

Each photograph was labeled from #1 to #9. MARTINEZ was asked if he could identify the subject(s) involved in the smuggling event. MARTINEZ identified the subject from photograph labeled #1 as the person who he saw mounting the engine on the boat at the time that he was boarding the boat. MARTINEZ also identified subject in the photograph labeled #1 as the boat captain. The subject in the photograph labeled #1 is David Alfonso BARRERA-Nunez. MARTINEZ previously mentioned that several subjects were arguing about the condition of the engine and how to fix it but could not identify any other co-principals from the nine-person photograph array.

David Alfonso BARRERA Nunez was placed under arrest for violation of 8 U.S.C. § 1324(a)(l)(A)(i), (v)(II), and (a)(l )(B)(iv).

Post Miranda, BARRERA stated he made arrangements to be smuggled through his cousin "Yordi GARCIA." BARRERA stated he was going to pay $250,000 pesos to be smuggled into the United States. BARRERA stated he was going to Los Angeles, California. BARRERA stated he has friends in Los Angeles that were going to assist BARRERA in getting work. BARRERA stated he didn't know what kind of work it would be.

BARRERA stated he left Puerto San Carlos on Wednesday (11/12/2025) and arrived in Ensenada, Baja California, Mexico, on the same day. BARRERA stated once in Ensenada, he stayed at an unknown hotel. BARRERA stated that on Friday (11/14/2025), he was told by an unknown smuggler to meet them at an unknown beach in Ensenada. BARRERA stated he got into a taxi and arrived at a house on the beach where 3 or 4 of the other smuggled aliens were. BARRERA stated he didn't know any of the smuggler's names or monikers. BARRERA stated they left on a panga at approximately 9:00 p.m. - 10:00 p.m.

BARRERA stated the operator of the panga was a skinny, dark skinned, male around his age, wearing blue pants, a gray sweater with red hoodie. BARRERA stated the operator of the panga was on

7

1  his phone with the smugglers and asked them where to land because the motor was not working.

2  BARRERA was shown photos of each individual found to be present on the panga and stated he did not

3  see the panga operator in any of the photos.

4      Luis Enrique BARRETO Goitia was placed under arrest for violation of 8 U.S.C. 1326- Re-entry

5  after removal.

6      BARRETO was convicted of a felony on April 12, 2012, and was first deported from the United

7  States on April 18, 2012. BARRETO has had his order of removal reinstated three times with his last

8  removal being on November 3, 2025. BARRETO entered the United States illegally on November 14,

9  2025, aboard the vessel in question. The following is his statement: BARRETO stated he last attempted

10  to enter the U.S. yesterday (Friday, November 14, 2025), at approximately 10 p.m. across the ocean on

11  a boat, and he was not inspected by an immigration officer. BARRETO stated his reason for entering

12  the U.S. illegally was to be with his family in Moreno Valley, California. BARRETO stated he has been

13  deported from the U.S. but did not see an immigration judge. BARRETO stated he made arrangements

14  to enter the U.S. illegally after agreeing to pay $16,000 USD. He said, he was taken in a car with other

15  people to a boat in either Rosarito or Popotla, Mexico. He didn't know exactly which place he was at

16  because the locations are so close. BARRETO said once he was on the boat he saw five people entering

17  the boat cabin. He stayed on the top deck with three other guys. BARRETO said he sat closest to the

18  back of the boat near the motor. BARRETO said as they moved further on the water the motor started

19  having issues. BARRETO said the captain and co-captain started to argue about whether they should turn

20  back to Mexico or not. The co-captain told the captain to turn the boat around and go back to Mexico.

21  BARRETO and the other people onboard also kept telling the captain to turn back to Mexico. The captain

22  refused to listen to their pleas and proceeded to move further north through the water. After several issues

23  with the motor not properly working the captain made some phone calls to someone asking for a closer

24

25

26

27

28

8

1  drop location. BARRETO said as soon as they were headed towards shore, one of the subjects on top
2  deck with him took off his life vest to prepare to jump off the boat and run. BARRETO said he was never
3  given a life vest. He said the captain and co-captain didn't have life vests either. BARRETO said the co-
4  captain was trying to steer the boat using a stick towards shore. The co-captain handed BARRETO his
5  cellular phone and told him to hold it. Soon after, the boat capsized. BARRETO said he was able to swim
6  out of the water and onto shore. He said he was the first one to make it to shore and the captain was the
7  second person. BARRETO said the captain ran away, never making an attempt to rescue any of the
8  passengers. BARRETO said after he made it to shore, he still had the cellular phone in his hand as he ran
9  up the rocks and towards the street, falling several times. One of the times he fell he claims he dropped
10  the cellular phone in the rocks.  BARRETO was shown a photo array of all the individuals arrested from
11  the boat. He was able to identify picture number 1, David Alfonso BARRRERA Nunez, as the captain of
12  the boat. After being shown the photo array, he claimed the co-captain was missing from the photos.
13  BARRETO described the co-captain as a dark skin skinny male with curly hair, in his 30s.
14
15
16
17
18
19
20
21
22
23
24
                                                9
25
26
27
28

**STATEMENT OF FACTS**

The complainant states that material witnesses Luis Enrique BARRETO Goitia (MW 1), Juvenal MARIANO Hernandez (MW 2), Beatriz Janet VELASCO Mejia (MW 3), and Antonio MARTINEZ Reyes (MW 4), are citizens of a country other than the United States, that each of said aliens have admitted that they are deportable as defined in Title 8, United States Code, 1229; that it is impracticable to secure their attendance at trial by subpoena; and that they are material witnesses and should be held or admitted to bail as prescribed in Title 18, United States Code, Section 3144.

On November 14, 2015, at approximately 2230 hours, Border Patrol Agents assigned to the Imperial Beach Station were notified of a small vessel crossing northbound though the maritime boundary line making its way towards Imperial Beach, California.  At approximately 2333 hours, Border Patrol Agents responded to Imperial Beach and spotted a vessel that had capsized on the surf (6ft waves) and several people emerging from the water. Agents detained subjects that were attempting to flee and rescued others that were still in the water trying to get out. A total of five subjects were detained and questioned as to their citizenship and legal status, all five stated that they were Mexican citizens without proper immigration documents to enter or remain in the United States.  Four other subjects perished in the accident and their bodies were recovered and turned over to the County of San Diego Medical Examiner. The five survivors were transported to the hospital for treatment or evaluation, while in custody of Border Patrol Agents.  One of the material witnesses identified David Alfonso BARRERA Nunez as the sole operator of the vessel.

The United States Border Patrol identified the five adult migrants as: Luis Enrique BARRETO Goitia, Juvenal MARIANO Hernandez, Beatriz Janet VELASCO Mejia, David Alfonso BARRERA Nunez, and Antonio MARTINEZ Reyes. The four deceased adults were identified as: Bartolo BALTAZAR Baltazar, Epifanio MOLINA Bravo, Hector LOPEZ Lopez, and Jane DOE.

The following individuals were identified as material witnesses (MW) to the case: Juvenal MARIANO Hernandez (MW 1), Beatriz Janet VELASCO Mejia (MW 2), and Antonio MARTINEZ Reyes (MW 3).

Juvenal MARIANO Hernandez (MW 1) stated he was attempting to enter the United States unlawfully to accompany his grandchild, Beatriz Janet VELASCO Mejia, who was traveling to

California. He did not want to travel by vessel, but Velasco insisted. MARIANO stated VELASCO arranged all travel and smuggling fees on his behalf and that he did not know the smuggling fee. MARIANO stated he was smuggled via a boat/vessel. When shown a photograph depicting the individuals involved in the incident, he promptly identified photograph #1 as the captain, identified as David Alfonso BARRERA Nunez. MARIANO stated that before the vessel capsized, the captain (BARRERA) ordered everyone to jump into the water. The vessel then capsized; MARIANO and Velasco were trapped inside. As the vessel rolled, MARIANO was able to pull VELASCO out, but he remained trapped. He stated a piece of metal penetrated his leg, causing a severe injury. He believed he was going to die but, when the vessel came to a stop, he was pulled out and rescued.

Beatriz Janet VELASCO Mejia (MW 2) stated she was caught approximately one week prior when she was on another maritime vessel that was intercepted by the United States. VELASCO stated she was deported back to Mexico where she then immediately returned to Tijuana to meet back with the smugglers in order to attempt another trip to the United States. VELASCO stated upon her return, she stayed near Popotla, Mexico in a waterfront building that had palm trees on the building. VELASCO stated she stayed in the same building/room as the others who were smuggled with her during the November 14th event. VELASCO identified Juvenal MARIANO HERNANDEZ as her grandfather and fellow passenger from the November 14th event. VELASCO identified and recognized all passengers from the November 14th event except for the individual in the picture labeled as "Picture 1" (BARRERA). VELASCO stated she was absolutely positive that none of her fellow passengers operated the vessel during the voyage from Mexico. When questioned about BARRERA, VELASCO stated she did not recognize him and ruled everyone out as a possible vessel captain except for BARRERA. VELASCO stated she could not remember if BARRERA was operating the vessel.

Antonio MARTINEZ Reyes (MW 3) stated that in the late afternoon hours of November 14,

2

2025, MARTINEZ and several other subjects were transported to Playas de Rosarito, in Rosarito, Baja California, Mexico. MARTINEZ and the other subjects hid in the bathrooms until later in the evening. MARTINEZ and the other subjects boarded a blue in color boat and departed for the United States. MARTINEZ was one of five subjects that was instructed to sit inside the cabin while the rest of the group remained on top during the rest of the trip. MARTINEZ did not know the exact number of subjects who were onboard the boat at the time of departure. MARTINEZ was provided with water and a life vest, but no food was available. MARTINEZ was under the impression that the boat was heading towards Los Angeles, California. Sometime during the trip, the boat began to have engine problems. MARTINEZ overheard two subjects arguing about how to fix the engine issues. MARTINEZ stated that the boat was flipped by a large wave as it approached the shoreline. MARTINEZ claimed that he found a pocket of air and was able to breathe air while the boat was flipped upside down and submerged with him and several other subjects inside. MARTINEZ was able to exit the cabin after another wave flipped the boat once again. MARTINEZ does not know how to swim and believed that he was going to drown. Somehow MARTINEZ was able to reach the shore and was aided by Border Patrol Agents who were present in the area.

MARTINEZ was presented with a photographic array consisting of the nine subjects that were rescued/recovered from the blue boat which capsized near the shoreline of Imperial Beach, California. Each photograph was labeled from #1 to #9. MARTINEZ was asked if he could identify the subject(s) involved in the smuggling event. MARTINEZ identified the subject from photograph labeled #1 as the person who he saw mounting the engine on the boat at the time that he was boarding the boat. MARTINEZ also identified subject in the photograph labeled #1 as the boat captain. The subject in the photograph labeled #1 is David Alfonso BARRERA-Nunez. MARTINEZ previously mentioned that several subjects were arguing about the condition of the engine and how to fix it but could not identify

3

any other co-principals from the nine-person photograph array.

David Alfonso BARRERA Nunez was placed under arrest for violation of 8 U.S.C. § 1324(a)(l )(A)(i) and(a)(l )(B)(iv).

Post Miranda, BARRERA stated he made arrangements to be smuggled through his cousin "Yordi GARCIA." BARRERA stated he was going to pay $250,000 pesos to be smuggled into the United States. BARRERA stated he was going to Los Angeles, California. BARRERA stated he has friends in Los Angeles that were going to assist BARRERA in getting work. BARRERA stated he didn't know what kind of work it would be.

BARRERA stated he left Puerto San Carlos on Wednesday (11/12/2025) and arrived in Ensenada, Baja California, Mexico, on the same day. BARRERA stated once in Ensenada, he stayed at an unknown hotel. BARRERA stated that on Friday (11/14/2025), he was told by an unknown smuggler to meet them at an unknown beach in Ensenada. BARRERA stated he got into a taxi and arrived at a house on the beach where 3 or 4 of the other smuggled aliens were. BARRERA stated he didn't know any of the smuggler's names or monikers. BARRERA stated they left on a panga at approximately 9:00 p.m. - 10:00 p.m.

BARRERA stated the operator of the panga was a skinny, dark skinned, male around his age, wearing blue pants, a gray sweater with red hoodie. BARRERA stated the operator of the panga was on his phone with the smugglers and asked them where to land because the motor was not working. BARRERA was shown photos of each individual found to be present on the panga and stated he did not see the panga operator in any of the photos.

Luis Enrique BARRETO Goitia was placed under arrest for violation of 8 U.S.C. 1326- Re-entry after removal.

BARRETO was convicted of a felony on April 12, 2012, and was first deported from the United States

4

on April 18, 2012.  BARRETO has had his order of removal reinstated three times with his last removal being on November 3, 2025.  BARRETO entered the United States illegally on November 14, 2025, aboard the vessel in question.  The following is his statement: BARRETO stated he last attempted to enter the U.S. yesterday, at approximately 10 p.m. across the ocean on a boat, and he was not inspected by an immigration officer.  BARRETO stated his reason for entering the U.S. illegally was to be with his family in Moreno Valley, California. BARRETO stated he has been deported from the U.S. but did not see an immigration judge.  BARRETO stated he made arrangements to enter the U.S. illegally after agreeing to pay $16,000 USD. He said, he was taken in a car with other people to a boat in either Rosarito or Popotla, Mexico. He didn't know exactly which place he was at because the locations are so close. BARRETO said once he was on the boat he saw five people entering the boat cabin. He stayed on top deck with three other guys. BARRETO said he sat closest to the back of the boat near the motor. BARRETO said as they moved further on the water the motor started having issues. BARRETO said the captain and co-captain started to argue about whether they should turn back to Mexico or not. The co-captain told the captain to turn the boat around and go back to Mexico. BARRETO and the other people onboard also kept telling the captain to turn back to Mexico. The captain refused to listen to their pleas and proceeded to move further north through the water. After several issues with the motor not properly working the captain made some phone calls to someone asking for a closer drop location. BARRETO said as soon as they were headed towards shore, one of the subjects on top deck with him took off his life vest to prepare to jump off the boat and run. BARRETO said he was never given a life vest. He said the captain and co-captain didn't have life vest either. BARRETO said the co-captain was trying to steer the boat using a stick towards shore. The co-captain handed BARRETO his cellular phone and told him to hold it. Soon after, the boat capsized. BARRETO said he was able to swim out of the water and onto shore. He said he was the first one to make it to shore and the captain was the second person. BARRETO

5

said the captain ran away, never making an attempt to rescue any of the passengers. BARRETO said after he made it to shore, he still had the cellular phone in his hand as he ran up the rocks and towards the street, falling several times. One of the times he fell he claims he dropped the cellular phone in the rocks. BARRETO was shown a photo array of all the individuals arrested from the boat. He was able to identify picture number 1, BARRRERA Nunez, David Alfonso, as the captain of the boat. After being shown the photo array, he claimed the co-captain was missing from the photos. BARRETO described the co-captain as a dark skin skinny male with curly hair, in his 30s.

EXECUTED ON THIS 16th DAY OF NOVEMBER 2025, AT APPROXIMATELY 8:28 A.M.

ANTONIO MEDRANO
Digitally signed by ANTONIO MEDRANO
Date: 2025.11.16 08:38:06 -08'0
_____
Antonio Medrano / Special Agent, Homeland Security Investigations

On the basis of the facts presented in the Probable Cause Statement consisting of (6) pages, I find probable cause to believe that the defendants named therein committed the offenses on November 14, 2025, in violation of Title 8, United States Codes, Sections 1324(a)(l)(A)(i) and(a)(l)(B)(iv) and 1326.

_____                    9:13 AM, Nov 16, 2025
HON. DAVID D. LESHNER                               _____
U.S. MAGISTRATE JUDGE                               DATE / TIME

6